# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

ROBERT J. KOSTER,

        Plaintiff,

vs.

DUBUQUE STAMPING &
MANUFACTURING, INC.,

        Defendant.

No. C05-1012

**ORDER**

_____

This matter comes before the court pursuant to the defendant's November 1, 2005, motion for summary judgment (docket number 7). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. For the reasons set forth below, the motion for summary judgment is granted.

## I.  FACTS IN LIGHT MOST FAVORABLE TO THE PLAINTIFF

Plaintiff Robert J. Koster ("Koster") worked as a shear operator at Dubuque Stamping & Manufacturing, Inc. ("Dubuque Stamp") from mid-1987 to August 23, 2004. Koster's personnel file contains a long history of written disciplinary action. On September, 18, 1995, Koster received a written warning for violating shop rules number 5, leaving the company premises during work hours without permission from his supervisor. Koster received another written warning on March 26, 1996, for repeated absences (10 in the past four months), which stated that repeated absences in the future would lead to termination of his employment. Koster received a notice of employee reprimand on September 36, 1996, for carelessness in the performance of duties. A second notice of employee reprimand was written on June 12, 1999, for failure to check

1

in on the DET terminals and wilfully hindering production or interfering with the work of another employee.

Koster received a final warning on June 26, 2000, for repeated complaints by his supervisor and for violating plant rule C-1 - wilfully hindering production or interfering with the work of another employee. The warning stated that the violation is generally handled with immediate discharge, but Koster was given one more chance to change his behavior. On January 25, 2001, Koster received a written reprimand for having 12 unexcused absences in the previous six months. The reprimand stipulated that any two unexcused absences within a moving 30 days would result in a written warning. Because Koster left work early on February 14, 2001, and was absent for personal business on February 28, 2001, he had two unexcused absences within 30 days and received a written warning. The warning stipulated that any two unexcused absences within the next 30 days would result in a 3-day disciplinary layoff.

Koster received a second final warning on October 26, 2001, for continued noncompliance with "company rules regarding spur of the moment vacation days, absenteeism, tardiness, and leaving work early". As a result, Koster was put on probation for the next 90 days, during which time he could not be absent, late, or leave early or he would be subject to termination. On November 27, 2001, Koster received a written reprimand for carelessness in the performance of duties or in the care, operations or use of company property or equipment. He received another written reprimand on February 2, 2002, for repeated absences or tardiness and leaving work early. The reprimand noted that Koster had continued to miss work after his probation period for excessive tardiness had ended.

On August 22, 2002, Koster's employment was terminated after he refused to follow the directions of his supervisor earlier in the week. The letter of termination noted that Koster was being terminated because of his history of numerous warnings and the fact that he was under two final warnings. Company President David Spahn reinstated Koster

on August 23, 2002, pursuant to a written agreement, signed by both parties, that Koster would abide by all plant rules and regulations. The agreement stipulated that any violation of a plant rule or regulation would result in immediate termination.

Koster received a notice of employee reprimand on October 23, 2003, for carelessness in the performance of duties, or in the care, operations or use of company property or equipment. On July 12, 2004, Koster was charged with an unexcused absence when he left work for a follow-up appointment for his diabetic and post-heart attack conditions. Koster asserts that he had originally planned on taking a vacation day for this appointment, but was told by Human Resources Administrator Amy Weidenbacher that he would not have to use a vacation day since he was leaving so late in the day. Although she denies it, Koster contends that Ms. Weidenbacher also told him that he would not be charged with an unexcused absence for his early leave. Koster again left work early on August 30, 2004, after he received a telephone call informing him that his mother was being taken by ambulance to the emergency room because of a suspected heart attack. Koster notified his supervisor that he was leaving and of the reason for his early leave. Koster missed work on the following day to make himself available to take his mother to a doctor's appointment. Koster was charged with one unexcused absence for missing work on August 30th and 31st.

Koster was again absent on October 5-7, 2004, due to bronchitis. On October 27, 2002, Koster called Dubuque Stamp in the morning to notify them that he would be absent because he was taking a "personal day" to "get [his] head together."[1] On October 28, 2004, Mr. Spahn terminated Koster's employment because of excessive absences in accordance with Paragraph 8 of Dubuque Stamp's Plant Rules and Regulations, which he had agreed to abide by as a condition of his last chance agreement ("LCA") on August 23, 2002.

---

[1]Deposition of Robert Koster, p. 67.

## II.  PROCEDURAL HISTORY

Koster filed suit against Dubuque Stamp and alleged retaliatory termination in violation of the Family Medical Leave Act ("FMLA").  29 U.S.C. § 2615.  Specifically, Koster argued that his absences on July 12, August, 30, and August 31, 2004 were FMLA-qualifying.  Koster asserts that Dubuque Stamp terminated the plaintiff on account of these protected absences.

Dubuque Stamp filed a motion for summary judgment on November 1, 2005, arguing that the plaintiff's absences did not qualify as FMLA leave, that the plaintiff failed to submit the required health care provider certification for any of his alleged FMLA-qualifying absences, and, in the alternative, the plaintiff had sufficient non-FMLA absences to justify his discharge.

Koster resisted Dubuque Stamp's motion for summary judgment on November 22, 2005.   Koster argued that his absences were FMLA-qualifying, that because the defendant's health care provider certification requirement does not conform to FMLA requirements, he could not be terminated based on failure to provide proper documentation, and that the plaintiff did not have repeated absences to warrant termination under Paragraph 8 of the Plant Rules and Regulations

## III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986).  Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "To preclude the entry of summary judgment, the nonmovant must show that on an element essential to [its] case and on which

[it] will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987).

In the context of employment discrimination cases, summary judgment should be used sparingly. Hardin v. Hussman, 45 F.3d 262, 264 (8th Cir. 1995) (citations omitted). "'Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.'" Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995) (quoting Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994)).

## IV. FAMILY MEDICAL LEAVE ACT
### A. Retaliatory Discharge Under the FMLA

In Smith v. Allen Health Systems, 302 F.3d 827 (8th Cir. 2002), the Eighth Circuit adopted the McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), burden-shifting framework for retaliatory discharge claims arising under the FMLA. Therefore, to establish a prima facie case under the FMLA, Koster must establish: (1) he engaged in activity protected by the FMLA; (2) his employer took adverse employment action against him; and (3) there is a causal connection between his protected activity and the employer's adverse employment action. Id. at 892.

Once a plaintiff establishes a prima facie case, the employer must then rebut the plaintiff's prima facie case with evidence of a legitimate, nondiscriminatory reason for taking the adverse employment action. Id. at 802-03. "The employer's explanation of its action must be 'clear and reasonably specific', but the employer does not have to prove to the court that it was motivated by the proffered reason." White v. McDonnell Douglas Corp., 985 F.2d 434, 436 (8th Cir. 1993) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)) (internal citations omitted). If the employer can rebut the plaintiff's prima facie case, the plaintiff must show "sufficient admissible evidence from which a rational factfinder could find the [employer]'s proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason.'" Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir. 1997) (applying McDonnell Douglas framework to sex discrimination under Title VII).

## B. Retaliation Claim

Dubuque Stamp disputes that Koster was engaged in an activity protected by the FMLA on any of Koster's three asserted protected absences. However, even assuming, arguendo, that Koster can establish a prima facie case of retaliation under the FMLA, Dubuque Stamp has articulated a legitimate nondiscriminatory reason for terminating Koster. The company asserts that, even assuming that Koster's absences were FMLA-qualified, his remaining absences were sufficient to violate Paragraph 8 of the Plant Rules and Regulations ("repeated absences or tardiness and leaving work early").

In addition, the defendant argues that the plaintiff was working at Dubuque Stamp under an LCA, which he violated by missing work for a "personal day" on October 27, 2004. The plaintiff was given a second chance following his termination on August 22, 2002, by company president David Spahn. Koster, Spahn, Robert Dean (chairperson), and Wayne Laufenberg (DBR) signed the August 23, 2002, agreement which stipulated that "[a]ny violation of a plant rule of regulation will result in immediate termination."

The Eighth Circuit has held that if an employee would have been terminated regardless of his request for FMLA leave, the court should not interfere with the company's decision to terminate the employee. See Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 981 (8th Cir. 2005); Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

Koster contends that because Paragraph 8 fails to define the term "repeated" it creates a genuine issue of material fact as to whether the company's nondiscriminatory explanation for his termination was pretextual. Plaintiff argues that company practice offers no assistance in defining "repeated" because the rule was inconsistently enforced. According to personnel manager Amy Weidenbacher's deposition, there is no magic number for determining when absences have become "repeated".[2] An employee's attendance records are examined on a case-by-case basis to determine whether it reflects repeated unexcused absences.[3] Even if the plaintiff were able to prove that Dubuque Stamp failed to follow its own policies in determining that the plaintiff's absences were repeated, the "plaintiff must establish that the failure to follow the policy affected [him] differently from other employees." Smith v. Allen Health Systems, 2001 WL 34148163, *5 (N.D. Iowa) (citing Floyd v. Missouri Department of Social Services, 188 F.3d 932, 937 (8th Cir. 1999)). The plaintiff has pointed to no evidence of other employees who were given preferential treatment due to their lack of FMLA absences. There is no evidence in the record to show that Dubuque Stamp's application of Paragraph 8 is motivated by whether the employee has taken FMLA leave. Where there is no evidence that failure to follow company policies affected the plaintiff differently than other employees, the plaintiff cannot establish a genuine issue of material fact. Chock v. Northwest Airlines, Inc., 113 F.3d 861, 864-65 (8th Cir. 1997).

---

[2]Deposition of Amy Weidenbacher, p. 17.

[3]Deposition of Amy Weidenbacher, p. 18.

In addition, Koster's contentions must be viewed in light of the LCA. The agreement constituted a contract, signed by Koster, Robert Dean, David Spahn, and Wayne Laufenberg. The agreement contained a provision, agreed to by all parties, that Koster's re-hiring was subject to the stipulation that "any violation of a plant rule or regulation will result in immediate termination." Following this agreement the plaintiff was absent from work on six occasions within a six month period (excluding the three alleged FMLA absences), before being terminated following his final absence on October 28, 2004. Furthermore, Koster received a written reprimand on October 23, 2003, for violating Paragraph 11 of the Plant Rules and Regulations ("carelessness in the performance of duties, or in the care, operations or use of company property or equipment"). Because Koster admittedly committed repeated violations of plant rules following the LCA and has failed to point to any evidence supporting discriminatory intent surrounding his termination, he has not established a genuine issue of material fact.

Koster's remaining argument that his LCA should have expired because final warnings have a life span of six months also fails. The LCA cannot be characterized as a final warning. Koster was originally fired on August 22, 2002, because he had previously received two final warnings and numerous other written reprimands. The LCA was in an entirely different format from the previous company-standard final warnings Koster had received and constituted a contract between the parties. The LCA contained no provision limiting its duration and, thus, lasted for the remainder of Koster's employment at Dubuque Stamp.

Koster has not established a genuine issue of material fact as to whether his termination was motivated by discriminatory intent. "In the absence of any evidence of discriminatory intent . . . it is not the prerogative of the courts or a jury to sit in judgment of employers' management decisions." Kiel, 169 F.3d at 1136. Dubuque Stamp was entitled to enforce the LCA. "It is well-established 'that the employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel

departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgements involve intentional discrimination.'" Grabovac v. Allstate Insurance Company, 426 F.3d 951, 955-56 (8th Cir. 2005) (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)).

In sum, Koster has not alleged sufficient facts from which a reasonable factfinder could determine that the legitimate, nondiscriminatory reason offered by Dubuque Stamp was a pretext for intentional discrimination. Therefore, Dubuque Stamp is entitled to summary judgment on Koster's claim of retaliatory discharge under the FMLA.

Upon the foregoing,

**IT IS ORDERED** that the defendant's November 1, 2005, motion for summary judgment (docket number 7) is granted; this matter is dismissed. The Clerk of Court shall enter judgment for the defendant.

March 1, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT